IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MOVEMENT MORTGAGE, LLC<br><br>                Plaintiff,<br><br>   v.<br>DERAN PENNINGTON, CHRIS SHELTON,<br>MATT SCHOOLFIELD, LINDA PLYMALE,<br>HEATHER FRYE, JOSH COVETT and<br>SUMMIT FUNDING, INC.,<br>                  Defendants. | Civil Action No. 3:23-cv-00633 |

## **PLAINTIFF MOVEMENT MORTGAGE, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR CONTEMPT AND/OR ADDITIONAL INJUCTIVE RELIEF AGAINST SUMMIT FUNDING, INC.**

Plaintiff Movement Mortgage, LLC ("Movement" or "Plaintiff"), by and through its undersigned counsel, hereby submits this reply in support of its Motion for Contempt and/or Additional Injunctive Relief Against Summit. In support thereof, Movement states as follows:

Summit is playing fast and loose with the Court. As reflected by the attached evidence more fully discussed below, Summit's Opposition parses the truth and advances a narrative that ultimately undermines Defendants' credibility. As reflected by the evidence, the actions at issue in this case have been directed by Summit's highest levels of management. And, its actions demonstrate an ongoing conscious disregard and attempt to circumvent (i) this Court's Order, (ii) Individual Defendants' Restrictive Covenants, (iii) Fiduciary Duties; and (iv) the legal protection of relevant Trade Secrets.

On November 20, 2023, Brian Mitchell ("Mr. Mitchell"), a whistleblower who was at that time employed at Summit as the Chief Growth Officer, contacted Movement unsolicited to inform Movement of Summit's illegal conduct directed at Movement, including the deliberate misappropriation of Movement's confidential information. The next day, Mr. Mitchell in a consensual recorded phone call relayed to Brady Yeager (National Sales Director at Movement Mortgage) and Tami Coffee (Contract Recruiter at Movement) that, at all times, Summit's CEO Todd Scrima has directed, encouraged, overseen and effectuated the theft of Movement proprietary information specifically for the purpose of "dissecting" and recreating Movement business methods so that Summit could better compete with Movement. *See* Transcript of Recorded Call[1], attached hereto as Exhibit A. Further, Mr. Mitchell confirms that the Individual Defendants have been engaged in the solicitation of Movement Employees in violation of their agreements, at all times encouraged and facilitated by Summit. *Id*.

Additional evidence and affidavits obtained by Movement confirm Mr. Mitchell's statements. For instance:

1. As set forth above, Todd Scrima – Summit's CEO specifically requested that Defendant Pennington – while still employed by Movement -- obtain Movement's P&L's including detailed information without limitations regarding every employee's wage information, income information, as well as all loan information on borrowers, loan details, margin information, basically 'the whole enchilada.'" *See* November 19, 2023, email thread between Ryan Stevens and Ashley Aviles (forwarding whistleblower email where Mr. Mitchell complained that Scrima directed him to "dissect" the P&L despite knowing that it

---

[1] This call was recorded with the consent of the parties. *See* Exhibit A. at pgs. 5-7.

was Movement's proprietary information)[2], attached hereto as Exhibit B. He then instructed his staff to "dissect" them, specifically so that they would be in a better position to compete with Movement and pay its staff. *See* June 5, 2023, Text Between Brian Mitchell and Todd Scrima, attached hereto as Exhibit C; *See* Exh. A at 13:11-17.

2. Despite the fact that Defendants have attempted to cast Defendant Linda Plymale ("Defendant Plymale") as a rogue actor, Scrima connected with Defendant Plymale on May 24, 2023, *just before* she began accessing and absconding with a wealth of Movement data. Notably, Scrima's connection to Defendant Plymale was facilitated by Defendant Shelton, while he remained a member of Movement's management overseeing Plymale. *See* May 24, 2023, Text Thread Between Scrima and Mr. Mithcell, attached hereto as Exhibit E. It strains credulity to believe that Scrima – who directed the theft and "dissection" of Movement's P&L to overcome its competitive advantage -- was entirely uninvolved in a low-level Movement employee's decision to steal other Movement trade secrets and that her alleged "rogue" actions are mere coincidence.

3. Defendant Pennington acted as Summit's agent to solicit Defendants Shelton and Schoolfield while he remained in Movement's employ. *See* Exh. A at 9:14-9:25, 10:9-18. And Scrima was directly involved with such solicitation. This contradicts Summit's

---

[2] While Movement recognizes that Scott Bruggerman, Summit's counsel, is on this email, there is no basis for application of the attorney-client privileged. As set forth in the email, Mr. Mitchell obtained information pertaining to this lawsuit from PACER and was not included in the group who Summit informed and/or otherwise made decisions concerning this Action. Moreover, as set forth in the declaration of Brian Mitchell, the purpose the email was to raise his personal concerns and establish that he was not in agreement with the actions that Summit was taking, not seek legal device on behalf of Summit. *See* Declaration of Brian Mitchell, attached hereto as Exhibit D. Even if someone ignores the purpose of Mr. Mitchell's email, the substance itself is not privileged as it relays information that is present in other clearly discoverable emails.

3

claims that Defendant. Pennington did not solicit Movement staff.  *See* Dkt. 36 at pg. 4; Dkt. 17 at pg. 19.   In truth, he did so while he was at Movement and was actively engaged as Summit's agent for such purposes.  .

4.	Scrima was aware that Defendant Schoolfield met with Movement employees from the Tampa branch and was using Movement's confidential information to solicit them. *See* Screenshot of email from Todd Scrima to Brian Mitchell, attached hereto as Exhibit F (showing Matt Schoolfield shared information about and met with a Movement branch located in Tampa, Florida).  Moreover, according to Mr. Mitchell, when Schoolfield would meet Movement employees he would "hand them off" them to Mr. Scrima.  Exh. A at 15:3-15.  In fact, Scrima congratulated Defendant Schoolfield upon the successful solicitation of Defendant Josh Covette in violation of his restrictive covenant. *See* September 1, 2023, Texts between Todd Scrima, Matthew Schoolfield, Brian Mitchell, and Kris Ringrose, attached hereto as Exhibit G. This evidence directly refutes Summit's repeated representations to this Court that the Individual Defendants were not soliciting Movement loan officers.  These solicitations were ongoing, continuous, and undertaken with Summit's encouragement and support.

5.	Even while the Stipulated Preliminary Injunction was being negotiated Summit's EVP of Sales, Robyn LaVassaur, flew to Houston with Defendants Schoolfield and Shelton to solicit Bart Evans.  *See* Exh. A at 15:17-16.  Moreover, in direct violation of the Stipulated Preliminary Injunction, Evans' direct subordinate, Chris McCabe, continued to solicit a Movement loan officer, both preceding and following the entry of the Stipulated Preliminary Injunction in violation of its terms.  *See* Declaration of Michael Davis at ¶¶5-8, attached hereto as Exhibit H.  Such solicitation included making disparaging remarks about

Movement in violation of the Stipulated Preliminary Injunction. And all such solicitations occurred with Defendant Evans' and Summit's blessing. *Id*. at ¶3.

As set forth above, virtually every representation that Summit has made to this Court is partially or totally false. And at every stage and in every manner, Summit's actions have been unlawful, negating both the credibility of their explanation and so infecting the totality of Summit's conduct that even seemingly appropriate behavior cannot be divorced or uncoupled from the illegal actions that permeate Defendants' conduct. Indeed, one cannot divorce Summit's claims of unilateral interest by Movement employees when it was procured by the theft and "dissection" of Movement's trade secrets, disparagement of Movement by then-current supervisors, and improper breach of fiduciary duties. Of course, the fact that Summit claims that 50 people across at least five states all shared an epiphany to join Summit is nonsensical. Summit's actions reflect a corporate raid undeterred by the law or the actions of this Court. The additional relief that Movement seeks is not sought to prohibit *fair* competition. To the contrary, the relief is to preserve fair competition. Apparently, Defendants do not understand the difference.

> I. **Summit's Wrongful Conduct Necessitates the Additional Relief that Movement Seeks**
>
> **A. Summit Misappropriated Confidential Information and Violated the Defend Trades Secret Act and North Carolina Trade Secrets Protection Act**

Summit's attempt to divorce itself from the actions of Defendant Plymale is disingenuous. Scrima solicited Plymale using her then-current Movement supervisor, Defendant Shelton, and he was in communication with her before she stole Movement's trade secrets. This is the same Scrima that repeatedly asked Individual Defendants to steal

Movement's P&L[3], instructed his staff to "dissect it" and then devised a way to hide it from the Court. *See* Exh. C (text message indicating that Summit would keep Movement's P&L on a WhatsApp database rather than store it its computers so as to avoid detection).[4] Specifically, when questioned about whether Scrima thought Movement's proprietary and confidential documents should be on Summit's servers, Scrima advised Mr. Mitchell to "set up miscellaneous WhatsApp accounts" and have Defendants Pennington, Schoolfield and/or Shelton "text it there." *See* Exh. A at 11:24-13:8; Exh B.

Moreover, Summit has specifically used this information for competitive reasons – to eliminate the competitive gap that existed between the Companies before it stole Movement's trade secrets. Indeed, after receiving the P&L from Mr. Pennington, Scrima sent an email to Mr. Mitchell attaching Movement's P&L and instructing Mr. Mitchell to "Please dissect this." *See* Exh. C; Exh. A at 13:11-17. Eventually, complying with Scrima's instructions, Roy Mall, Summit's Chief Financial Offer, analyzed the information. *See* Exh. A at 13:11-15:2; *See* September 22, 2023, Text Thread Between Todd Scrima, Roy Mall, Michael Beamon, and Brian Mitchell, attached hereto as Exhibit I. Summit used that information as a blueprint to recreate Movement's model and improve its margins, such that it could be more competitive against Movement. *See* Exh. A at 21:18-22:23. Indeed, in a September 22, 2023, email to Mike Beamon and Roy Mall, Scrima states "if you look at Movement P&L, here are some pointers on how to create it and rules around it. We have to

---

[3] Movement's P&L is an excel spreadsheet that included detailed information without limitations regarding every employee's wage information, income information, as well as all loan information on borrowers, loan details, margin information. As Mr. Mitchell wrote in his email – it is the "whole enchilada." *See* Exh. B.

[4] Further, although Summit claims to have no interest in Movement's confidential and proprietary information, almost two months after Movement initiated this Action, Summit has not returned the information it acknowledges that Defendant Plymale stole.

charge for actual charges involved. For example, the software fee, charge for training, etc.. We need to be crystal clear on this model. If its loosey goosey, we will lose." *Id*. After analyzing Movement's P&L, Scrima advised his employees that "[Summit] can perfect it." *See* Exhibit I.

It is evident that Summit violated the Defend Trade Secrets Act ("DTSA") and North Carolina Trades Secrets Protection Act ("NCTSPA") for the purpose of enabling it to become more competitive with Movement. Indeed, Summit was fully conscious of the illegal nature of its activities, planning to conceal it through the creation of WhatsApp accounts. Thus, Summit's theft and use of this information is not only a violation of the DTSA and NCTSPA but is a prime example of how interwoven Summit's leadership was in the nefarious actions of the individual defendants. This conduct warrants the additional injunctive relief that Movement seeks.[5]

### B. Summit Interfered with Enforceable Restrictive Covenants.

Summit seeks to convince this Court that approximately fifty Movement employees suddenly had an epiphany to join Summit – a Company that may have never hired directly from Movement in the past. The facts establish, however, that Summit's interference with restrictive covenants dates back to March 2023 as follows:

1. In March 2023, Summit first began conversations with Defendant Pennington regarding employment with Summit. After those conversations Defendant Pennington

---

[5] Summit fails to address Movement's argument that Summit obtained obtain confidential, nonpublic borrower information sent to Movement for the purpose of obtaining financing through its Portfolio Retention Scheme. While Summit submits the declaration of Jana Catching in an effort to explain the purported diversion of these three customers yet fails to refute that the transfer of this information to Summit is a misappropriation of Movement's trade secrets.

7

introduced Summit to Schoolfield and Shelton. At some point after Defendants Schoolfield and Shelton no longer appeared interested in engaging with Summit, Scrima used Defendant Pennington[6] to solicit Defendants Schoolfield and Shelton, going as far as providing Defendant Pennington with terms of Defendants Schoolfield and Shelton's offers to join Summit. *See* Exh. A at 9:14-9:25, 10:9-18;

2. Scrima assisted Defendant Shelton in soliciting Defendant Plymale while Defendant Shelton was still employed at Movement. *See* Exh. C.

3. Scrima developed and implemented a plan to solicit Defendants Schoolfield and Shelton, which involved the recruitment of their teams, despite knowing about the non-solicit provisions. *See* December 3, 2023, Email from Brian Mitchell to Ryan Stearns, attached hereto as Exhibit K.

4. Scrima was aware of Defendant Schoolfield's solicitation of Movement's employees, including employees from the Tampa branch and often would have Defendant Schoolfield "hand-off" the Movement employees in an effort to circumvent detection of the violation of his non-solicit. *See* Exh. A at 15:3-15; Exh. F. Scrima congratulated Defendant Schoolfield when, in violation of his restrictive covenant, Defendant Schoolfield successfully recruited Defendant Covett from Movement. *See* Exh. G. Summit sent Schoolfield and Shelton to solicit Bart Evans, along with Summit's EVP of sales Robyn

---

[6] In April 2028, as a material term and consideration for his employment with Movement (then named New American Mortgage), Defendant Pennington executed a Loan Officer Compensation Agreement. *See* Deran Pennington Loan Officer Compensation Agreement, attached hereto as Exhibit J. Therein, Defendant Pennington agreed that for a period of six months following the termination of his employment, he would not solicit any employee to leave their position at Movement. Movement intends to seek leave to file a Third Amended Complaint related to Defendant Pennington's breach of and Summit's interference with this restrictive covenant.

LaVassaur, even while Defendants were negotiating the Stipulated Preliminary Injunction. Exh. A at 15:17-16:3. In fact, it is likely that the about-face in Summit's position while negotiating the Stipulated Preliminary Injunction was nothing more than a ruse to stall entry of the Order. *See* October 31, 2023 email from Denny Major to Graham Pittman and November 1, 2023 email from Denny Major to Ari Karen, collectively attached hereto as Exhibit N. Of course, Summit ultimately disregarded that Order through McCabe and Evans' solicitation of loan officers and the continuation of false and defamatory statements. *See* Exh. H.

The above are merely examples of Summit's ongoing disregard of the contractual obligations owed to Movement.

### C. Summit Violated of the Unfair Deceptive Trade Practices Act

Movement has demonstrated a likelihood of success on the merits of its claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") by demonstrating that:

- Summit utilized the Individual Defendants, both during and after their employment with Movement, to solicit key Movement employees to resign *en masse* and join the employ of Summit;

- Summit and the Individual Defendants solicited Movement employees secretly, while the Individual Defendants were employed and compensated by Movement in a supervisory capacity;

- Defendants misappropriated confidential information and trade secrets from Movement, including dozens of files and highly sensitive employee information

- and customer data, and used it to diminish the competitive advantage that Movement had *fairly* developed against its competitors;

- To erase Movement's competitive advantage, Summit "dissected" "actual consolidated Movement Mortgage results. It includes without limitation, every employee's wage information, their income information, as well as all loan information on borrowers, loan details, margin information, basically "the whole enchilada." *See* Exh. B. These materials were obtained by Summit after its CEO requested them from Individual Defendants while they were current Movement employees. *See* Exh. C;

- Defendants spread false information about Movement using current supervisory staff to "poison the well" in furtherance of their attempts to solicit Movement employees to join Summit's employ and continued to do so even after agreeing to A Stipulated Preliminary Injunction. *See* Exh. H; *and*

- Summit, a Company that Movement was utterly unaware of six months ago, has now successfully solicited fifty employees in only three (3) months. Indeed, four Movement employees resigned as of the day this brief was filed, demonstrating Defendants will not stop their unlawful actions without an appropriate order of this Court.

Summit's reliance on the case of *Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 224 N.C. App. 401, 421, 742 S.E.2d 535, 549 (2012) reflects an utter lack of self-awareness. *Austin Maint & Const.*, involved a claim against a former foreman and his four-man crew that resigned to work for the competing company. 224 N.C. App. at 402–03. While it is entirely possible that four people on a crew might collectively decide to look for a new

employer it is not possible that fifty employees, working in states that include Texas, North Carolina, Virginia, Florida and Geargia all had an epiphany to join a completely unknown competitor who was not even licensed in their states weeks before. Further, in Summit's cited authority, there was no evidence of the intentional theft, "dissection," misuse, and concealment of trade secrets or the facilitation of fiduciary breaches of supervisory staff, nor was there evidence of widespread commercial disparagement. [7] All told, Summit's comparisons demonstrate the need for injunctive relief – not its inapplicability.

### D. Summit has Brazenly Violated the Stipulated Preliminary Injunction

This Court's November 3, 2023, Order provided in relevant part that :

> Defendants shall not directly or indirectly solicit any Movement employee to leave Movement and/or join Summit (i) if Defendants have already solicited that individual since June 1, 2023; and/or (ii) if Defendants are directly or indirectly using use any confidential or proprietary information obtained from Movement to aid or facilitate such solicitation. For purposes of this Order, "indirect" solicitation shall not include generally or publicly viewable social media posts that relate generally to Summit or a job position at Summit, provided they are not targeted at, sent to, or specifically described or identified via any form of communication to any Movement employee (or a Movement employee). Notwithstanding the foregoing and without waiving Movement's claims for damages, it shall not be a violation of this Order if a Movement Employee that has already received a written offer of employment accepts such offer without further solicitation.

*See* Dkt. No. 23.

---

[7] Moreover, the other cases cited by Summit do not support their case. In *Roundpoint Mortgage Co., v. Florez*, 2016 WL 687629, at *24 (N.C. Super. Ct. Feb. 16, 2016), the plaintiff's UDTPA claims survived the defendant's motion for summary judgment. Likewise, in *The Building Center v. Carter Lumber, Inc.*, 2016 WL 6142993 at *6 (N.C. Super. Ct. Oct. 21, 2016), the court held that the plaintiff's UDTP claim survived a motion to dismiss because the court found there were sufficient allegations to support the underlying misappropriation and tortious interference claims.

According to the declaration of Michael Davis, and from information obtained from Brian Mitchell all these provisions have been violated. *See* Exh. H. First. Mr. Davis confirms that Summit via his supervisor Chris McCabe ("Mr. McCabe"), began soliciting him to join Summit prior to the entry of the Stipulated Preliminary Injunction. *Id*. at ¶5. And this behavior continued after the entry of that Order even after the day McCabe resigned. *Id*. at ¶¶5-7 At all times, Mr. McCabe acted with the approval of Summit and Evans, who were apparently approving the multiple offers to join the Company. Additionally, Mr. McCabe continued to "poison the well" claiming that Mr. Davis' compensation was going to be reduced and that it was time to "jump ship." *Id*. at ¶4. Both of these actions violated the clear and express terms of this Courts Order.

Furthermore, Mr. Davis' declaration is hardly the only evidence of Defendants' actions in violation of this Court's order. Indeed, immediately after Mr. Evans -- who was solicited while Defendants negotiated and agreed to the Stipulation Preliminary Injunction -- joined Summit, approximately twenty-five offers went out to Movement staff. Based on Mr. Evans' activities immediately preceding his termination, many of those employees received offers to join Summit, also in violation of this Court's Order. Indeed, approximately twenty-two employees have been lured to Summit **SINCE** the Stipulated Preliminary Injunction was entered by this Court. And, at all times this has been facilitated by Summit's intentional theft and dissection of Movement's P&L, which includes considerable employment information, or as Mr. Mitchell referred to it; "the whole enchilada." *See* Exh. B.

Moreover, the brazen manner of Summit's activity is noteworthy. While violating the Orders entered by this Court and misrepresenting information to this Court, Defendants

celebrate their wholesale disregard for the law and fair competition, flaunting each victory over lawful competition on social media. *See* November 8, 2023, Facebook post of Matt Schoolfield ("Summit Funding is so very fortunate to add you both to our growing team and gain access to your leadership. The hope and dream of **inviting you alongside** is that you change us.")(emphasis added) and November 9, 2023 Facebook post of Destinne Hawk)(" "Situations like this is when I know **I made the right decision (for myself and my team) to join Summit Funding."**)(emphasis added), collectively attached hereto as Exhibit L. In doing so, Defendants legitimize the illegal demanding a judicial response reflecting the serious and wanton nature of their actions.

II.     CONCLUSION

For the reasons set forth above, and in Movement's Motion for Contempt and/or Additional Injunctive Relief Against Summit Funding, Inc., Movement respectfully requests that this Court enter the Proposed Order finding Summit in contempt and granting Movement additional injunctive relief. Based on the additional information that Movement has uncovered and Summit's continued actions, the Stipulated Preliminary Injunction is insufficient to halt further unlawful conduct, protect Movement's interests and balance the scales. It is clear that Summit's unlawful conduct has been encouraged, facilitated, and enabled by Scrima, who unashamedly discusses ways to conceal his conduct from the Court. *See* Exh. C. Furthermore, Summit has openly violated the terms of the Stipulated Protected Order, while flagrantly bragging about the same on social media. *See* Exh. H (explaining in detail Chris McCabe's efforts to solicit Mr. Davis on a daily basis beginning on November 3, 2023—the date the Court entered the Stipulated Protective Order); *See* November 21, 2023 Offer Letter to Jenna Bodenhamer, attached hereto as Exhibit M (offer

letter to Movement employee in Bart Evans' region less than twenty days after entry of the Stipulated Preliminary Injunction.).

And, even to the extent some small portion of the behavior may, on its own, not violate any law or order, the reality is that it was enabled by an assortment of illegal activities, including but not limited the theft and misuse of trade secrets, fiduciary breaches, and violations of the Unfair and Deceptive Trade Practices Act. As such, one cannot uncouple whatever lawful activities may have occurred after and in conjunction with the illegal activities with those that are unlawful. Put another way, Summit cannot claim that employees legitimately inquired on its website when it (i) caused their Supervisors to solicit them while they were employed at Movement; (ii) advised them (as Supervisors) of impending doom at the Company; (iii) made offers of employment aided by the diversion and "dissection" of Movement's trade secrets; and (iv) diverted borrowers for these loan officers through the alleged Portfolio Retention sham. The fact that Defendants have been smart enough to attempt to hide their tracks by having employees "inquire" on its website is the definition of window dressing and it cannot absolve Defendants of culpability; to the contrary, it simply demonstrates the consciousness of guilt.

In light of the same, Movement requests that Order be entered:

1. Ordering Summit to produce John Felix for a deposition within fourteen (14) days;

2. Ordering Todd Scrima to respond to a subpoena for documents related to Movement and produce his cellular devices for forensic imagining within fourteen (14) days;

3. Ordering Scott Bruggerman to respond to a subpoena for non-privileged documents related to Movement and produce his cellular devices for forensic imagining within fourteen (14) days;

4. Ordering Robyn LaVassaur to respond to a subpoena for documents related to Movement and produce her cellular devices for forensic imagining within fourteen (14) days;

5. Permitting Movement to notice the deposition of Brian Mitchell;

6. Enjoining Summit, and all other persons or entities acting in concert with them or on its behalf, whether employed at Summit or otherwise directly or indirectly soliciting Movement employees, until further the Parties complete further discovery;

7. Order Summit to bear the costs associated with ESI under the Stipulated Preliminary Injunction;

8. Ordering Summit to bear the costs associated with the forensic imaging of Scrima and Bruggerman's devices;

9. Ordering Summit to pay Movement's attorneys' fees and costs associated with bringing the instant motion, including counsel's appearance at the hearing before this Court; *and*

10. Granting Movement such other and further relief as the Court may deem just, equitable, and proper.

*Signature on following page.*

Respectfully Submitted,


/s/ Ari Karen
G. Bryan Adams, III (N.C. Bar No. 17307)
C. Grainger Pierce, Jr. (N.C. Bar No. 27305)
VAN HOY, REUTLINGER, ADAMS & PIERCE, PLLC
737 East Boulevard
Charlotte, North Carolina 28203
Telephone: 704-375-6022
Fax: 704-375-6024
Email: bryan.adams@vraplaw.com
grainger.pierce@vraplaw.com


Ari Karen (admitted *pro hac vice*)
V. Amanda Witts (admitted *pro hac vice*)
Alexander Rogosa (admitted *pro hac vice*)
MITCHELL SANDLER, LLC
1120 20TH Street, NW, Suite 725
Washington, DC 20036
Telephone: 202-886-5265
Email: akaren@mitchellsandler.com
v.awitts@mitchellsandler.com
arogosa@mitchellsandler.com

## CERTIFICATE OF SERVICE

     I certify that this day I have served a copy of the within and foregoing Plaintiff's Reply in Support of its Motion for Contempt and/or Additional Injunctive Relief Against Summit with the Clerk of Courts using the CM/ECF system which will automatically send e-mail notification of such filings to the attorneys of record.

Respectfully submitted this 5th day of December 2023.

                                                                       */s/ Ari Karen*