**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

MOVEMENT MORTGAGE, LLC
Plaintiff,

v.

DERAN PENNINGTON, CHRIS SHELTON,
MATT SCHOOLFIELD, LINDA PLYMALE,
HEATHER FRYE, JOSH COVETT and
SUMMIT FUNDING, INC.,
Defendants.

Civil Action No. 3:23-cv-00633

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO ORDER AND
RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Movement Mortgage, LLC ("Movement"), by and through the undersigned

counsel, hereby submits this Memorandum in response to Defendants' Chris Shelton ("Defendant

Shelton"), Matt Schoolfield ("Defendant Schoolfield"), Linda Plymale ("Defendant Plymale"),

Heather Frye ("Defendant Frye"), Josh Covett ("Defendant Covett") (collectively, "Restricted

Employees"), Deran Pennington ("Defendant Pennington") (collectively with the Restricted

Employees, "Individual Defendants"), and Summit Funding, Inc.'s ("Summit") (collectively,

"Defendants") Objections to the Magistrate Judge's Memorandum and Recommendations (Dkt.

110).[1]

---

[1] Defendants' objections to the Memorandum and Recommendation were filed in three separate memoranda (Dkts. 123, 124, and 125); however, the objections are addressed collectively in this Memorandum.

i

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 3

III.   MOVEMENT'S RESPONSES TO OBJECTIONS ........................................ 4

  A. The Non-Solicitation Provisions Are Narrowly Tailored to Protect
     Legitimate Business Interests and Are Facially Valid. ................................... 4

    1. Movement Has Met Its Burden to Establish a Legitimate Business Interest in
       Restricting the Solicitation of Former Employees. ............................................ 4

    2. The Individual Defendants' Argument that the Non-Solicitation Provisions Prohibit
       Solicitation of Any Employee for Any Reason Does Not Defeat the Validity of the
       Provisions. ........................................................................................................ 5

    3. The Court May Excise Any Problematic Provisions Pursuant to
       the Blue-Pencil Doctrine. .................................................................................. 7

    4.  The Employee and Client-Based Restrictions Are Reasonable in Scope. ......... 8

    5. The Recommendation Properly Considered the Sophistication of the Parties in
       Finding the Non-Solicitation Provision Enforceable. ...................................... 10

    6. The Restrictive Period of the Non-Solicitation Provisions is Reasonable Regardless
       of Any Look-Back Period. ............................................................................... 11

    7. The Individual Defendants Received Adequate Consideration for
       Their Execution of the Team Leader Agreement. ........................................... 12

  B. The Confidentiality Provision in the Employees' Employment Agreements is
     Valid and Enforceable. ................................................................................... 13

    1. Judge Keesler Properly Concluded That
       the Confidentiality Provision is Enforceable. ................................................. 13

    2. The Court Should Apply the Blue-Pencil Doctrine to the Extent Elements of the
       Confidentiality Provision are Deemed Unenforceable. ................................... 14

  C. Movement Has Pleaded Sufficient Facts in its Third Amended Complaint to
     Establish Tortious Interference Against Summit and Civil Conspiracy
     Against All Defendants. ................................................................................... 15

IV.   CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................... 9

*Braxton v. Estelle*,
   641 F.2d 392 (5th Cir. 1981) ........................................................................................... 3

*Carlson Envtl. Consultants, PC v. Slayton*, 3:17-CV-149-FDW-DCK,
   2017 WL 4225993 (W.D.N.C. Sept. 21, 2017) ...................................................... 4, 5

*Childress v. Abeles*,
   240 N.C. 667, 84 S.E.2d 176 (1954).............................................................................. 15

*Cochran v. O'Malley*, No. 3:23-cv-219-MOC
   2024 WL 4271589 (W.D.N.C. Sept. 23, 2024) ........................................................... 3

*Farr Assoc., Inc. v. Baskin*,
   138 N.C. App. 276 (2000) ............................................................................................... 6

*Hejl v. Hood, Hargett & Assocs., Inc.*,
   196 N.C. App. 299 (2009) ............................................................................................. 12

*Hooters of Am., Inc. v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) ........................................................................................ 13

*Mastrom, Inc. v. Warren*,
   18 N.C. App. 199 (1973) ............................................................................................... 13

*McGriff Ins. Servs., Inc. v. Ryan Hudson & Digital Ins. LLC*, 22 CVS 680,
   2023 WL 197441 (NC Sup. Ct. Jan. 17, 2023)................................................. 4, 5, 12

*McLamb v. T.P. Inc.*,
   173 N.C. App. 586 (2005); ........................................................................................... 13

*Miller and Asheville Associates v. Berman*,
   255 N.C. 400, 121 S.E. 2d 593 (1981).......................................................................... 10

*Orpiano v. Johnson*,
   687 F.2d 44 (4th Cir. 1982) ............................................................................................. 3

*Peoples Sec. Life Ins. Co. v. Hooks*,
   322 N.C. 216, 367 S.E.2d 647 (1988)........................................................................... 15

*Phillips Elecs. N. Am. Corp. v. Hope*,
   631 F. Supp. 2d 705 (M.D.N.C. 2009) ...................................................................... 14

*Software Pricing Partners v. Geisman* No. 3:19-cv-00195-RJC-DCK,
   2020 WL 3249984 (W.D.N.C. June 16, 2020) ........................................................ 14

*State v. Phillip Morris USA, Inc.*,
   193 N.C. App. 1, 666 S.E.2d 783 (2008) .................................................................. 6

*Stout v. Preston Cnty. Sheriff's Dep't.*, No. 21-7231,
   2024 WL 3372915 (4th Cir., Jul. 11, 2024) .............................................................. 3

*Superior Performers, Inc. v. Meaike*, No. 1:13CV1149,
   2014 WL 1412434 (M.D.N.C. Apr. 11, 2014) .......................................................... 7

*Truist Fin. Corp. v. Rocco*,
   2024 NCBC 28 (2024) ............................................................................................... 11

*U. S.v. Bondurant*, No. 5:97CV162-V,
   1999 WL 357920 (W.D.N.C. Mar. 29, 1999) ........................................................... 4

*United Labs., Inc. v. Kuykendall*,
   322 N.C. 643 (1988) ................................................................................................. 10

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
   2024 NCBC 47 (2024) ............................................................................................... 13

*Wells Fargo Ins. Servs. USA, Inc. v. Link*,
   2018 WL 2123700 (NC Sup. Ct. May 8, 2018) ........................................................ 6

*Wells Fargo Ins. Servs. USA, Inc. v. Link*,
   372 N.C. 260 (2019) ................................................................................................... 9

*Williams v. Chase Manhattan Mortgage*,
   2005 WL 2544585 (W.D.N.C. Oct. 11, 2005); ........................................................ 4

**Statutes**

28 U.S.C. § 636 ................................................................................................................. 3

iv

# I.    INTRODUCTION

On September 27, 2024, United States Magistrate Judge David C. Keesler ("Judge Keesler") issued a Memorandum and Recommendations (the "Recommendation") recommending that Defendants Covett, Frye, Plymale, Schoolfield, and Shelton's partial "Motion to Dismiss" (Dkt. 61, 62, 63, 64, and 65) be denied without prejudice. Judge Keesler also recommended that Defendants Pennington and Summit's "Partial Motion[s] for a Judgment on the Pleadings" (Dkt. 73 and 74) be denied without prejudice. The Restricted Employees filed their objections on October 25, 2024 (Dkt. 123), and Defendants Pennington and Summit filed their objections separately on October 28, 2024 (Dkt. 124 and 125, respectively). For the reasons set forth below, this Court should adopt Judge Keesler's Recommendations.

This case is about Defendants' unlawful scheme to steal Movement's confidential, proprietary, and trade secret information and to poach Movement employees. Defendant Pennington was Movement's eighth employee and held the position of National Sales Leader at Movement. Around March 2023, Defendant Pennington started engaging with Summit concerning employment. Soon thereafter, Defendants Schoolfield and Shelton began engaging with Summit as well. For the next three months, while negotiating with Summit, Defendants Pennington, Schoolfield, and Shelton continued to work at Movement. On July 3, Defendants Schoolfield, Shelton, and Pennington resigned. Shortly thereafter, Defendant Plymale, Shelton's assistant at Movement, resigned. Upon forensic investigation of Defendant Plymale's Movement computer, Movement learned that in the weeks leading up to and immediately following her resignation, she began accessing, copying, and deleting Movement's confidential and proprietary trade secret information.

1

On or about September 1, 2023, Defendant Covett resigned. Immediately thereafter, several members of his team resigned from Movement and joined Summit. On September 22, 2023, Defendant Frye resigned from Movement. Immediately after her resignation, Summit sent offers to every loan officer in Defendant Frye's market. To date, over forty employees have resigned from Movement and joined Summit. Upon information and belief, Summit sent offers to dozens of other Movement employees.

Defendants' objections are largely recycled arguments from the Defendants' initial motions, which have already been considered and rejected by Judge Keesler. They challenge Judge Keesler's findings primarily as to the breach of contract claim by erroneously claiming that the Non-solicitation and Confidentiality provisions in the employees' agreements are unenforceable. Based on their challenge to the breach of contract, they also lodge a fallacious objection to Judge Keesler's recommendation that the tortious interference and civil conspiracy claims have a sufficient underlying claim of wrongful conduct. Summit also objects to Judge Keesler's finding that Movement sufficiently pled malice as to its tortious interference claim.

As Movement will establish below, Judge Keesler's opinion thoroughly considered the parties' arguments and reached a legally sound recommendation to deny the Defendants' motions. First, both the Non-Solicitation and the Confidentiality provisions are enforceable. The Non-Solicitation Provisions are narrowly tailored to protect Movement's significant business interests of protecting its client base that has been built through reputation, relationships, and referrals. Judge Keesler scrupulously considered the Defendants' various arguments aimed at defeating the enforceability of the Non-Solicitation Provision; however, the Provision is not overbroad – it is narrow, reasonable, and the Defendants understood what terms they were binding themselves to. Similarly, the Confidentiality Provision, which the Defendants also agreed to be bound by, is valid

and enforceable. As the claim for breach of contract was properly pled, this claim constitutes a sufficient underlying act of wrongful conduct for Movement's tortious interference and civil conspiracy claims.

Accordingly, Movement respectfully requests that the Court adopt Judge Keesler's Recommendation and deny the Individual Defendants' partial Motion to Dismiss and Defendants' Pennington and Summit's partial Motion for a Judgment on the Pleadings.

## II.    LEGAL STANDARD

"After a magistrate judge issues a report and recommendation, any party may object to the report." *Stout v. Preston Cnty. Sheriff's Dep't.*, No. 21-7231, 2024 WL 3372915, at *4 (4th Cir., Jul. 11, 2024). "If the grounds for objection are clear, district court judges must consider them *de novo*." *Id.* (quoting *Elijah,* 66 F.4th 454, 460 (4th Cir. 2023)); *see also* 28 U.S.C. § 636(b)(1) ("A [district] judge…shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). However, courts have recognized certain exceptions to *de novo* review of the magistrate judge's recommendation. For example, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see also Braxton v. Estelle*, 641 F.2d 392 (5th Cir. 1981). Further, "the statute does not on its face require any review at all of issues that are not the subject of an objection." *Cochran v. O'Malley*, No. 3:23-cv-219-MOC, 2024 WL 4271589 at *1 (W.D.N.C. Sept. 23, 2024).

### III. MOVEMENT'S RESPONSES TO OBJECTIONS

### A. The Non-Solicitation Provisions Are Narrowly Tailored to Protect Legitimate Business Interests and Are Facially Valid.

1. <u>Movement Has Met Its Burden to Establish a Legitimate Business Interest in Restricting the Solicitation of Former Employees.</u>

Contrary to the Restricted Employees' objection, Judge Keesler properly concluded in his Recommendation that the Non-Solicitation Provisions protect a legitimate business interest "in preventing its employees and/or recently departed employees from recruiting other Movement employees to also leave." Recommend. at 19. Although the Restricted Employees argue that Movement did not meet its burden in "plead[ing] and prov[ing] all conditions necessary" for enforcement of the Non-Solicitation Provision, they do not specify how exactly Movement failed to establish a legitimate business interest. Individual Defs. Objs. at 1-2. Rather, they merely state in generality that the restrictive covenants are so broad, "it is impossible" that they are narrowly tailored.[2] *Id.*

In the Recommendation, Judge Keesler properly relied on *Carlson Envtl. Consultants, PC v. Slayton* and *McGriff* in analyzing Movement's allegations and evaluating its legitimate business interests. *Carlson Envtl. Consultants, PC v. Slayton*, 3:17-CV-149-FDW-DCK, 2017 WL 4225993, at *9 (W.D.N.C. Sept. 21, 2017); *McGriff Ins. Servs., Inc. v. Ryan Hudson & Digital Ins. LLC*, 22 CVS 680, 2023 WL 197441, at *8 (NC Sup. Ct. Jan. 17, 2023). Movement successfully pleaded in the Third Amended Complaint that its business model is premised on the "creation of relationships through its employees enabling them to sustain longstanding relationships with consumers." Third Am. Compl. at ¶ 20. This allows Movement to avoid purchasing customer leads

---

[2] Objections, such as Defendants', which merely disagree with the conclusions of the Magistrate and reiterate a party's prior arguments, do not constitute specific objections as contemplated by Rule 72. *Williams v. Chase Manhattan Mortgage*, 2005 WL 2544585, *7 (W.D.N.C. Oct. 11, 2005); *U. S.v. Bondurant*, No. 5:97CV162-V, 1999 WL 357920, at *2 (W.D.N.C. Mar. 29, 1999).

or developing an internet-based lead system, both of which are common business models for other lenders in the industry. *Id.* Thus, as Movement's culture is designed to "ingratiate and promote its people to other real estate industry professionals and borrowers alike," "its employees become a legitimate resource and asset in its value and success." *Id.* This falls squarely within the finding in *McGriff* that this "investment in employee hiring, training and retention may itself be a legitimate reason for it to use agreements designed to tamp down efforts by disgruntled employees to recruit established employees." 2023 WL 197441, at *8. Further, the business interest of protecting "customer relationships and goodwill" has been recognized by North Carolina courts as legitimate. *Carlson Envtl. Consultants, PC*, at *9. Therefore, Judge Keesler properly determined that Movement met its burden to establish the Non-Solicitation Provisions protect a legitimate business interest.

      2.  <u>The Individual Defendants' Argument that the Non-Solicitation Provisions Prohibit Solicitation of Any Employee for Any Reason Does Not Defeat the Validity of the Provisions.</u>

In sections B and C of their Objections, the Restricted Employees argue that Movement has not satisfied, nor can it sensibly satisfy, its burden to plead facts sufficient to justify its legitimate business interests for prohibiting the solicitation of any Movement employee for any reason. Restricted Employees Objs. at p. 2-3.[3] The Individual Defendants also object to the finding that the Non-Solicitation Provision is no broader than necessary given their reading that it prohibits the solicitation of Movement employees for any reason. *Id.* at p. 4-7. These arguments are essentially regurgitated arguments from the Individual Defendants' partial motion to dismiss that were already considered by Judge Keesler and rejected as unpersuasive. Recommendation at p. 17-18. This decision was not in error.

---

[3] Pennington also argues in Section I of his objections that Movement cannot have a "plausible business interest in prohibiting the solicitation of any employee." Pennington Objs. at 2-6.

Judge Keesler relied on *Wells Fargo Ins. Servs.*, which provides that "North Carolina courts will enforce a covenant not to compete if it is: "(1) in writing; (2) reasonable as to [the] terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." 2018 WL 2123700, at *12 (NC Sup. Ct. May 8, 2018). While courts may not read phrases out of the restrictive covenants to make them enforceable, a court must "infer the intent of the parties from the terms in the contract." *Wells Fargo* at *7 (citing *State v. Phillip Morris USA, Inc.*, 193 N.C. App. 1, 12-13, 666 S.E.2d 783, 791 (2008)). "Intent is derived not from a particular contractual term but from the contract as a whole." *Id.* (quoting *State v. Phillip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005)).

Considering the Individual Defendants' employment agreements, including the Non-Solicitation Provisions, in their entirety, it is evident that the parties' intent was not to prohibit non-sensical extremes, *e.g.*, preventing recruitment of Movement's employees for attendance at a football game, serving on a non-profit board, or attending a church. Rather, the intent of the Non-Solicitation Provisions was to prevent the precise circumstances under which the Individual Defendants victimized Movement in this case – solicitation of key employees at Movement by disgruntled, former employees resulting in a subsequent exodus to a competitor of the human capital that Movement invested its time and money in building. Considering that Movement's business plan is centered on empowering its employees to build longstanding relationships with customers that allow it to generate future business and referrals, the Non-Solicitation Provisions are reasonable and no broader than necessary to protect its significant business interests. *See Farr Assoc., Inc. v. Baskin*, 138 N.C. App. 276, 280 (2000) ("the protection of customer relations against misappropriation by a departing employee is well recognized as a legitimate interest of an employer.").  However, assuming *arguendo* that the Non-Solicitation Provisions are broader in

6

scope than necessary, the Magistrate correctly concluded that the problematic provisions may be excised pursuant to the "blue-pencil doctrine," as addressed in Section A(3) *infra*.

> 3. <u>The Court May Excise Any Problematic Provisions Pursuant to the Blue-Pencil Doctrine.</u>

The Individual Defendants object to Judge Keesler's application of the blue-pencil doctrine to excise certain provisions of the Non-Solicitation Provisions that are overbroad. *See* Restricted Employees Objs. at 16-19, Pennington Objs. at 6-8. First, the Restricted Employees argue that the provision that was blue-penciled by Judge Keesler cannot be stricken because it was not a separable part of the contract. Restricted Employees Objs. at 17. They also contend that the Non-Solicitation Provisions would still be too broad even if the blue-pencil doctrine was applied. *Id.* at 18-19.

Here, Judge Keesler proposed striking the phrase, "for any reason including but not limited to having said Company employee work for or engage" in section (c) of the Non-Solicitation Provisions. Contrary to the Restricted Employees' argument, this phrase is readily separable, and courts have not engaged in such a narrow analysis as the Restricted Employees propose to analyze separability. North Carolina courts have held that separability is not defined by whether the phrase is "separated off by number or in a different clause," but rather the analysis hinges on whether "the language can be readily struck through [such that] the rest of the restrictive covenant still makes sense and stands on its own." *Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 WL 1412434, at *39 (M.D.N.C. Apr. 11, 2014). The language that Judge Keesler proposes striking from the Non-Solicitation Provisions using the blue-pencil doctrine meets this test as it merely takes out the reason for which the employee is performing the action concerning the Company employee. After removing this phrase, the provision still reads logically and stands on its own.

7

Further, as discussed *supra*, the provisions are already narrowly tailored to serve a legitimate business purpose; thus, striking the proposed phrase only furthers its narrowness.

Pennington argues that Judge Keesler "applied his logic in a wholesale fashion to Pennington's different Non-Solicitation Provision without a separate analysis." Pennington Objs. at 6-7. However, it is evident in reading the Recommendation that Judge Keesler did not intend to apply the blue-pencil doctrine to Pennington's provision. Judge Keesler explained that while he did not find the Non-Solicitation Provisions overbroad, "the Shelton, Plymale, Frye and Covett provisions seem to include the broadest terms and might be modified" in accordance with the blue-pencil doctrine. Recommend. at 17. Therefore, Pennington's argument concerning blue-penciling may be disregarded as the Recommendation merely concluded that Pennington's provision was not overbroad and did not need to be modified.

> 4. <u>The Employee and Client-Based Restrictions Are Reasonable in Scope.</u>

In Section D of their objections, the Restricted Employees also argue that Movement's expansion of restrictions to include employees of its predecessors, successors, assigns & subsidiaries renders the non-solicit provisions facially void. Individual Defs. Objs. at 7-13. They contend that Movement's prior name change does not save the provisions' validity and that Judge Keesler erred in placing the burden on the Individual Defendants, rather than Movement, to show that these restrictions did not render the Non-Solicitation Provisions invalid. *Id.* Defendant Pennington also argues that his Non-Solicitation Provision is too broad as it prohibits the solicitation of employees from any Movement "affiliate." Pennington Objs. at 4-5.

However, Movement successfully met its light burden in the Third Amended Complaint to plausibly establish that the restrictions are reasonable. Contrary to the Restricted Employees' contention that *Link* is instructive, the situation here drastically differs from that case. 372 N.C. at

289. Unlike *Link*, where the Plaintiff asked that the provision be disregarded, Movement successfully asserted that it has a legitimate business interest in restricting Individual Defendants from soliciting employees working for Movement's affiliate companies. Opp. Br. at 8-9. Defendants Schoolfield, Shelton, Frye, and Covett held high-level positions at Movement, and it was highly likely that these employees had "involvement or contact with" Movement's revenue sources. *See Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 274 (2019) (finding that restrictive covenants restricting solicitation of employees in affiliate companies was not lawful where it was "highly unlikely that the vast majority of these employees would have had any involvement or contact with [the] commercial insurance customers"). Judge Keesler did not improperly shift Plaintiff's burden of proof to the Defendants; rather he properly considered the parties' arguments and concluded that the Plaintiffs met their burden to show that the Non-Solicitation Provisions are reasonable and protect a legitimate business interest. Recommend. at 19; *Wells Fargo Ins. Servs.* at 267 ("The party seeking enforcement of a restrictive covenant has the burden of proving its reasonableness.")

In addition to the high-level positions held by some of the Restricted Employees, Movement pleaded sufficient facts in its Third-Amended Complaint plausibly demonstrating that Defendant Pennington was employed by New American Mortgage, LLC, prior to its name change to Movement. Third Am. Compl. ¶ 25. Thus, if not for the "affiliate" language that Pennington alleges is void, his agreement would not have been valid after New American Mortgage changed its name to Movement Mortgage. These facts were sufficient to establish facial plausibility at the motion to dismiss stage because Movement showed "sufficient factual content" to allow the court to draw the reasonable inference that the employee and client-based restrictions were reasonable in scope. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9

5. <u>The Recommendation Properly Considered the Sophistication of the Parties in Finding the Non-Solicitation Provision Enforceable.</u>

The Restricted Employees argue in Section E of their Objections that Judge Keesler improperly relied on the Individual Defendants' sophistication in recommending denial of the Individual Defendants' motions. Individual Defs. Objs. at 13-15. They contend that sophistication is irrelevant when considering whether the Non-Solicitation Provisions unreasonably restrain trade in violation of North Carolina public policy. *Id.* Similarly, in Section K of their Objections, they argue that a Court is not bound by language in a contract reflecting that at the time the contract was executed, the parties regarded the restrictions as reasonable and legitimate. *Id.* at 24.

While a court is not *bound* by such language, courts in North Carolina have held that "a further consideration…in recognizing the validity of…covenants, is that at the time of entering the[] contracts containing covenants not to compete both parties apparently regarded the restrictions as reasonable and desirable." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649 (1988). The premise for this consideration is that "by enforcing the restrictions [a] court is only requiring the defendants to do what they agreed to do." *Id.* (quoting *Miller and Asheville Associates v. Berman*, 255 N.C. 400, 404, 121 S.E. 2d 593, 595 (1981)). Therefore, the sophistication of the parties and the intent of the parties at the time the contract was executed are relevant to whether the parties were able to understand the contracts and appreciate the significance of the covenants and their consequences. Judge Keesler did not indicate that he was bound by such factors in his Recommendation; rather, he merely noted that the parties' business acumen and the targeted language in the contract contributed to the compelling argument that the parties "should be bound to their commitments." Recommend. at 28. Indeed, the Individual Defendants did not assert in their partial motions to dismiss and for summary judgment that the agreements were unconscionable or that they did not comprehend the terms. This serves the laudable goal of taking

sophisticated businesspeople at their word when entering agreements and discourages those same businesspeople from later reneging when keeping their word becomes inconvenient.

      6. <u>The Restrictive Period of the Non-Solicitation Provisions is Reasonable Regardless of Any Look-Back Period.</u>

In Section F of their Objections, the Restricted Employees also argue that because of the look-back period, the Non-Solicitation Provisions contain a restrictive period of at least eleven (11) years. Restricted Employees Objs. at 15-16; Restricted Employees' Reply Br. at 8-9. They argue that Judge Keesler erred in failing to apply this look-back period and in "relying heavily on this error to recommend denial of the Individual Defendants' motion to dismiss." Restricted Employees Objs. at 15-16.

Even if the total restrictive period amounts to eleven (11) years because of the look-back period, courts have held that the business justification for employee Non-Solicitation Provisions of these lengths "is not as susceptible to such a hard and fast rule" as customer non-solicitation restrictions. Thus, while the Superior Court in *Rocco* applied the look-back period to employee non-solicitation restrictions, the Court also concluded that periods of seven (7) and seventeen (17) years were reasonable and protected legitimate business interests of the employer. *Truist Fin. Corp. v. Rocco*, 2024 NCBC 28, ¶40 (2024) ("Unlike customer relationships, where personal relationships are paramount, the protection of a company's confidential information and the protection against disruption due to employee turnover are legitimate business interests that do not necessarily require a departing employee to exploit his or her personal relationships with other employees."). Similarly, here, even if the total period amounts to eleven (11) years with the look-back period, this period is still reasonable to protect Movement's legitimate business interests.

7. The Individual Defendants Received Adequate Consideration for Their Execution of the Team Leader Agreement.

The Restricted Employees also object to Judge Keesler's finding that Defendant Schoolfield received adequate consideration for executing the Team Leader Agreement. Restricted Employees Objs. at 22-23. They assert that Judge Keesler erred in relying on a sentence in *McGriff Ins. Servs. v. Hudson*, 2023 WL 197441, at *7-8 (N.C. Super. Jan. 17, 2023) stating that "the employment relationship itself, unbroken by the parties, constitutes adequate consideration for the non-solicitation obligations." Defendant Pennington also argues that Judge Keesler erred in failing to separately evaluate whether there was adequate consideration for his agreement. Pennington Objs. at 8-10.

Judge Keesler did not err in finding that there was sufficient consideration for the employment agreements. Specifically, as to Defendant Schoolfield, in exchange for his execution of the employment agreement, Schoolfield received increased responsibilities, a promotion, and additional compensation. That is enough. *Hejl v. Hood, Hargett & Assocs., Inc.*, 196 N.C. App. 299, 304 (2009) (finding that the foregoing benefits all meet the "new" or "separate" consideration required for a restrictive covenant entered after a working relationship already exists); *see also* Pltf. Opp. at 18-23 (discussing adequacy of the consideration for Defendants Schoolfield and Covett).

Pennington's contention that sufficient consideration for his agreement was defeated by Movement retaining the discretion to change the loan officer compensation is also without merit. This exact argument was asserted by the Restricted Employees, addressed in Movement's Opposition brief, and rejected by Judge Keesler. Pltf. Opp. Br. at 20-21. The facts concerning Pennington's consideration are even more in favor of adequate consideration – Pennington executed his 2008 compensation agreement contemporaneously with commencing his

12

employment at New American Mortgage. Third. Am. Compl. at ¶¶ 25-26. Pennington then executed the 2009 Agreement on or about May 11, 2009, in exchange for increased compensation. *Id.* at ¶¶ 27-28. Pennington's commencement of employment and increased compensation constituted sufficient consideration for executing the agreements. *See e.g., Mastrom, Inc. v. Warren*, 18 N.C. App. 199, 202 (1973); *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 591 (2005); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (all finding that consideration, which was contingent at the employer's discretion and not certain, was sufficient).

**B.    The Confidentiality Provision in the Employees' Employment Agreements is Valid and Enforceable.**

      1.    Judge Keesler Properly Concluded That the Confidentiality Provision is Enforceable.

Defendant Pennington also asserts in his objections that Judge Keesler erred by considering the sophistication of the parties in determining the enforceability of the Confidentiality Provision. Pennington Objs. at 10-12. As discussed *supra* in Section A(5), the sophistication of the parties is a valid factor in determining the parties' intent as to what restrictions they agreed to be bound by in executing the contract. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, 2024 NCBC 47, ¶28 (2024) ("Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution.") As the law "favors the enforcement of contracts intended to protect legitimate interests," as much as it "frowns upon unreasonable restrictions," courts consider the parties' intentions to be bound by commitments in their contracts.

Further, Defendant Pennington argues that Judge Keesler's reliance on *Software Pricing Partners v. Geisman* was misplaced as language in the Confidentiality Provision contained in his Confidentiality and Non-Solicitation Agreement is equally expansive and contains the very

13

information deemed unenforceable in *Software Pricing Partners*. Pennington Objs. at 10-12. However, contrary to the language Pennington quotes in *Software Pricing Partners*, Pennington's Confidentiality Provision does not "prohibit disclosure or use of all ideas, know-how, technology, contacts, relationships, and information related to [Movement's] business, regardless of whether such items are confidential." No. 3:19-cv-00195-RJC-DCK, 2020 WL 3249984 (W.D.N.C. June 16, 2020). It is evident that the language in Pennington's agreement does not pertain to public information; rather, it seeks to "prevent disclosure and use of 'proprietary and confidential information.'" Pennington's argument that the inclusion of "customers" and "customer lists" cannot be confidential as they are publicly available is erroneous; it is widely recognized that "customer pricing lists, cost information, confidential customer lists, and pricing and bidding formulas may constitute trade secrets." *Phillips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 721 (M.D.N.C. 2009); *see* Third Am. Complaint ¶ 159 (asserting that "Movement derives independent economic value from its confidential data and trade secrets including its borrower information, customer lists, customer data, employee data, and pricing information.")

      2.   The Court Should Apply the Blue-Pencil Doctrine to the Extent Elements of the Confidentiality Provision are Deemed Unenforceable.

In Section V of his Objections, Defendant Pennington argues that Judge Keesler errs in applying the "blue-pencil doctrine" to Pennington's confidentiality provision. Pennington Objs. at 6-8. However, Judge Keesler did not apply the doctrine as he concluded that the Confidentiality Provision in Pennington's agreement was not overbroad as written. *See* Recommend. at 27-28 ("the undersigned is persuaded that Plaintiff's Non-Solicitation and Confidentiality Provisions are reasonable and enforceable"). Thus, the blue-pencil doctrine was inapplicable to the confidentiality provisions of Pennington's agreement.

**C.     Movement Has Pleaded Sufficient Facts in its Third Amended Complaint to Establish Tortious Interference Against Summit and Civil Conspiracy Against All Defendants.**

Defendants Pennington and Summit argue in their Objections that as Judge Keesler erred in finding that Movement's breach of contract claim should survive, Judge Keesler also erred in finding that Movement's tortious interference and civil conspiracy claims should also survive. Pennington Objs. at 12, Summit Objs. at 2-3. They assert that both claims rely on the viability of the underlying breach of contract claim, which fails as otherwise argued in their objections. However, as discussed in this Response, Movement successfully pleaded a cause of action for breach of contract as the non-solicitation and confidentiality provisions contained in the agreements are enforceable pursuant to North Carolina law.

Summit also argues that Movement failed to successfully plead malice as part of its claim for tortious interference. Summit Objs. at 2-3. To prevail on a claim for tortious interference in North Carolina, a plaintiff must show legal, rather than actual malice. *Childress v. Abeles*, 240 N.C. 667, 675, 84 S.E.2d 176, 182 (1954) ("It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case [for tortious interference with contract.]"). Instead, legal malice "denotes the intentional doing of the harmful act without legal justification." *Id.* Although Summit is a competitor of Movement, Movement plausibly plead in the Third Amended Complaint that Summit "solicited employees of Movement to breach their employment agreements and fiduciary duties through transmitting customer information and diverting loans via misrepresentation…without regard to the customer's preference or best interests." Third Am. Compl. at ¶ 191. These actions did not constitute a lawful means of competing with Movement, and thus Summit is not entitled to a privilege for justifiable interference. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988) (explaining that "competition in business constitutes justifiable interference in another's

business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful").

### IV.     CONCLUSION

Judge Keesler correctly found that Plaintiff established a *prima facie* case of breach of contract, tortious interference, and civil conspiracy. Therefore, Plaintiff respectfully requests that the Court adopt Judge Keesler's Recommendation (Dkt. 110), deny the Individual Defendants' partial Motion to Dismiss and Defendants' Pennington and Summit's partial Motion for a Judgment on the Pleadings, and award such other and further relief as the Court deems just and proper.

This the 8th day of November, 2024.

                                                     */s/ Ari Karen*
                                                     G. Bryan Adams, III (N.C. Bar No. 17307)
                                                     C. Grainger Pierce, Jr. (N.C. Bar No. 27305)
                                                     VAN HOY, REUTLINGER, ADAMS &
                                                     PIERCE, PLLC
                                                     737 East Boulevard
                                                     Charlotte, North Carolina 28203
                                                     Telephone: 704-375-6022
                                                     Fax: 704-375-6024
                                                     Email: bryan.adams@vraplaw.com
                                                             grainger.pierce@vraplaw.com


                                                     Ari Karen (admitted *pro hac vice*)
                                                     V. Amanda Witts (admitted *pro hac vice*)
                                                     Alexander Rogosa (admitted *pro hac vice*)
                                                     MITCHELL SANDLER PLLC
                                                     1120 20TH Street NW, Suite 725
                                                     Washington, DC 20036
                                                     Telephone: 202-886-5265
                                                     Email: akaren@mitchellsandler.com
                                                             v.awitts@mitchellsandler.com
                                                             arogosa@mitchellsandler.com

## CERTIFICATE OF SERVICE

I certify that this day I have served a copy of the foregoing Plaintiff's Response to Defendants' Objections to Order and Recommendations of United States Magistrate Judge with the Clerk of Courts using the CM/ECF system which will automatically send e-mail notification of such filings to the attorneys of record.

Respectfully submitted this 8th day of November, 2024

*/s/ Ari Karen*